READ & SON
*vs*
MARSH.

absence of proof
to the contrary,
notice directed
to him at that
place is suffici-
ent₈ to chaige
him.

Wherefore the judgment is affirmed.

*Guthrie* for plaintiffs.  *Duncan* for defendants.

---

PET. & SUM.

*Case* 4.

*Sept.* 5.

The case stated.

# Read & Son *vs* Marsh.

### ERROR TO THE BOURBON CIRCUIT.

### *Bills of Exchange.    Acceptance.*

JUDGE BRECK delivered the opinion of the Court.

THIS was a petition and summons brought by the defendant against the plaintiffs in error, upon a bill of exchange.

The facts as presented on the trial are these : on the 1st March, 1842, William Alexander drew a bill of exchange, payable to his own order, six months after date, at the Louisville office of the Northern Bank of Kentucky, on Thomas J. Read & Son, at Louisville, for one hundred and ninety dollars.  At the date of the bill, or shortly after, Alexander endorsed and passed it to B. B. Marsh, the defendant in error, to enable him to raise that much money due him from Alexander.  In April follow-ing, the bill was presented to Read & Son for accep-tance, which they refused.  In June Read & Son wrote to Alexander, and among other things, say in their letter : "Your drafts to Capt. Lear for $700 and $190, shall be protected, and as fast as you send off B. and R. we will aid you by other acceptances ; and as soon as you get through delivering the B. and R. (bagging and rope,) for the $1300 acceptance and the $1000 on the $2000 note,

we are ready to send you another acceptance for $1400, on account of ——." A desire is, also, expressed in the letter, to have the selling of all the bagging and rope made by Alexander. The letter concludes by saying: "We hope yet to do well, notwithstanding the lies and slanders propagated against us, that we have stopped payment." Marsh was, shortly after the date of this letter, apprised of its contents, and was advised and determined, upon the faith of it, to hold on to the bill and forward it to Louisville for collection. The bill, at maturity, was presented to Read & Son and regularly protested for nonpayment. Alexander was a manufacturer of rope and bagging in the county of Bourbon, where Marsh also resided. Read & Son resided in Louisville.. It appears, from the testimony of *Capt. Lear,* that he held a bill for $700, drawn by Alexander upon Read & Son, which was the only bill he ever held upon them, drawn by Alexander.

Alexander proved that the bill in contest was the same bill referred to in the letter of Read & Son, and that he had drawn none of that kind in favor of Lear; that he was in the habit of sending them large quantities of rope and bagging, and that they would accept his drafts when they had in hand funds to render them safe; that he was embarrassed in his pecuniary affairs, and unable to pay his debts, which was known to both the plaintiffs and defendants; that since he drew the draft in question, he had forwarded the defendants rope and bagging to a large amount, but none to meet said draft.

It further appeared, from the testimony of the Cashier of the Bank in Paris, that Alexander presented the letter of Read & Son in Bank, where its contents were made known to Marsh, for the purpose of sustaining his own and their credit, and that he exhibited the letter as referring to the draft, in favor of Capt. Lear for $700, and to the one in favor of Marsh for $190.

Such being the testimony, the Court, on motion of the plaintiff, instructed the jury: "That if they believed the bill sued on was the bill for $190, in the defendants' letter referred to, that the letter of the defendants was an acceptance of said bill." A verdict was found for the

READ & SON
*vs*
MARSH.

A letter written by drawee before or after the drawing of a bill of exchange, promising to accept or protect a bill of exchange, may operate as an acceptance, although the holder may not be apprised thereof, or thereby induced to take the bill.

plaintiff and judgment thereon, to reverse which the defendants prosecute this writ of error.

Whether the Court correctly instructed the jury, is the main question for consideration. The effect or import of the instruction is, that the jury should find for the plaintiff, provided they believed the bill sued on to be the bill referred to in defendants' letter to Alexander. We regard the testimony as to the identity of the bill as entirely satisfactory and conclusive, and of course that the verdict was right under the instruction. Was the Court right in assuming that the letter was an acceptance, if the bill sued on was the one referred to in the letter? It seems to be now well settled, that a letter, promising to accept or protect a bill, whether written before or after it is drawn, may operate as an acceptance, and that it may so operate, although the holder has not been induced by such letter or promise, to take the bill: *Wynne* vs *Raikes*, (5 *East*, 514;) *Chitty on Bills*, 177, and the authorities there referred to. The promise to protect the bill, in this case, is unqualified and express, and the whole letter of a character well calculated to give credit to the bill and to induce persons to take it upon the faith of the promise to protect it. It is true the plaintiff was, at the date of the letter, the holder of the bill, but upon being advised of the contents of the letter, although the defendants had previously refused to accept it, he retains it and again forwards it for collection. We are, therefore, of opinion that the letter was a virtual acceptance of the bills therein referred to, and binding upon the defendants. But it is insisted that the bill in this case, is not one of the bills which the letter promises to protect. The letter says: "Your drafts to Capt. Lear for $700, and $190, shall be protected." Capt. Lear holds a draft for $700, and the plaintiff holds one for $190. The defendants were apprised of the draft for $190. It had previously been presented to them; no other draft of the description had been drawn upon them by Alexander. Had the expression in the letter been, your drafts to Capt. Lear for $700, and to ———— for $190, shall be protected, no doubt could exist that the promise would extend to a draft to the plaintiff for $190. So a letter promising to

COOMBS<br>vs<br>CLASS.

accept a bill for a given amount, before the bill was drawn, would be an acceptance to the subsequent holder, although not named in the letter.

We are not only satisfied that the bill in this case is the one referred to in the letter, but that the testimony adduced to establish its identity, was competent, and consequently that there was no error in the instruction to the jury, and that the judgment ought not to be disturbed. We have deemed it unnecessary to notice particularly, the motion for a non-suit, as the Court, if right in the instructions to the jury, was unquestionably right in over-ruling that motion.

Wherefore, the judgment is affirmed.

*Guthrie* for plaintiff: *Loughborough* for defendant.